STATE v. IRENE HAM, MAUDE HAM PHIPPS, VIOLA CHURCH, JEAN TEASTER, AND LEONARD TEASTER.

(Filed 12 June, 1953.)

1. **Criminal Law § 8b—**

An aider and abettor is one who advises, counsels, procures, or encourages another to commit a crime.

2. **Same—**

All who are present and either aid, abet, assist or advise in the commission of a crime or are present for such purpose to the knowledge of the actual perpetrator, are principals and equally guilty.

3. **Same—**

Mere presence at the scene of the crime without any actual participation in its commission is insufficient to constitute a person an aider and abettor in the absence of any evidence tending to show that such person by word or deed gave active encouragement to the perpetrator or by his conduct made it known that he was standing by to lend assistance to the perpetrator when and if such assistance should become necessary.

4. **Same: Homicide § 2—Mere fact that bystander was husband of one of perpetrators of crime is insufficient to constitute him aider and abettor.**

Evidence tending to show that the driver of a car was the husband of one of its occupants and a friend or acquaintance of the other women occupants, that the occupants of his car and the women occupants of another car alighted from their respective cars and became embroiled in a "free-for-all" fight, that he took no part therein but merely watched the fight from the rear of his car, without any evidence that he either said anything to the participants or did anything, *is held* insufficient to withstand his motion to nonsuit, since whether he would have intervened to aid his wife if necessary, although a probability, rests in surmise based upon human nature and not an inference of fact supported by evidence.

5. **Criminal Law § 52a (2)—**

Conviction of a criminal offense may not rest upon surmise or conjecture or upon facts consistent with guilt but likewise consistent with innocence.

**6. Homicide § 27h—**

　　Where defendants plead not guilty and contend throughout the trial that they fought only in their necessary self-defense, an instruction to the effect that defendants contended that upon a finding by the jury of certain facts beyond a reasonable doubt, they would be guilty of murder in the second degree, must be held for error.

**7. Criminal Law § 81c (2)—**

　　Where it is apparent from the record that an erroneous instruction probably influenced the verdict of the jury, such error cannot be held harmless.

**8. Criminal Law § 77d—**

　　The Supreme Court is bound by the record and must assume that it is a correct transcript of the proceedings in the court below.

APPEAL by defendants from *Rudisill, J.,* October Term, 1952, ASHE.

Criminal prosecution under a bill of indictment in which it is charged that the defendants did kill and murder one Lola Church.

The homicide grew out of an affray between two groups of women. One was composed of *feme* defendants and the other of the deceased and the State's witnesses Evelyn Lemly, Lavonne Church, Delcie Testerman, and a Mrs. Stike. For convenience the defendants will hereafter be referred to as the Teaster group, and the other, as the Church group.

On 16 September, 1951, Lavonne Church and Evelyn Lemly and a Mrs. Stike went to the prison camp at Smethport in Ashe County to visit Garney Church, a convict confined in the prison camp. He is the brother of Lavonne Church and Evelyn Lemly, the son of the deceased, and the husband of the defendant Viola Church. Mrs. Stike is his grandmother. While they were at the camp the defendants came up on the automobile of defendant Leonard Teaster, husband of defendant Jean Teaster, to visit the same prisoner. Viola got out and went to the fence where Evelyn Lemley and Mrs. Stike were talking to Garney Church. Evelyn and Mrs. Stike left and went by the Teaster car. Evelyn said, "You g—— d—— whores." She and Mrs. Stike got on their car and left. They returned in about fifteen or twenty minutes, and Evelyn went back to the fence where Viola and Garney were talking. Evelyn and Viola "stood there and quarreled a while" and Evelyn then went back to her car. As her party passed the Teaster car, Evelyn said, "We will waylay you down the road." Epithets were passed between the two groups of women, and there was evidence that one of the Teaster group threw a bottle at the Lemly automobile. The Teaster group remained at the camp until about 4:30 and then left to go to the home of the father of *feme* defendants.

When the Church group left the camp the second time, they went to the home of the deceased. Later in the afternoon they, including the

deceased and Delcie Testerman, drove their automobile on a narrow road leading from the camp by the home of the father of *feme* defendants, turned around, and stopped in a sharp curve of the road. They testified they stopped because the automobile struck some rocks and to let Lola Church and Delcie Testerman get out and walk back home. There was evidence this is not the road they would travel on their way home. The defendants, on their way to the home of the father of the *feme* defendants, where one of them lived and where the Teasters had left a child, came up to the Church group car and stopped. They testified they were forced to stop because the Church group had put large rocks in the road, and Evelyn Lemly was standing in the road in a position where they would have to run over her if they proceeded.

From this point on the testimony is in sharp conflict. The substance of the State's evidence is to the effect the *feme* defendants got out of their car and assaulted the Church group with rocks, a bottle, and a car battery cable. The evidence for defendants tends to show that their way was blocked, that all of the Church group except Mrs. Stike were out of their car, or got out, and Lavonne Church said to them: "Roll out, you damn whores, we are going to kill you." "Stop, damn you." "Crawl out of there if you want to fight." Defendants got out and "she started throwing rocks, and so I (Jean Teaster) started towards her and she throwed one and hit me above the eye . . . Mrs. Church threw rocks. I had my hands on no one but Lavonne." As Lola Church got out of her car, Maude Phipps hit her with something that looked like a battery cable. In short, a general affray in which rocks and other weapons were used ensued. During the course of the affray, Lola Church was hit on the head with a rock, and in the face with a bottle, receiving an injury from which she died shortly thereafter.

The State's evidence as it relates to defendant Leonard Teaster tends to show that when his passengers got out of the automobile at the scene of the affray, he also alighted, went to the back of his car, placed one hand on his hip and the other on his automobile, and watched the fight. After Mrs. Church was hit, he said, " 'Girls, you all get in the car and let's go,' and so he got all in the car except Irene, and Irene said, 'I want to get that grey-headed bitch.' He said, 'You done killed one and you had better get in here.' "

Other State's witnesses testified that if Leonard Teaster did anything, they did not see it; that he stood with one hand on the car and one on his hip and watched it well done. There was testimony coming from witnesses for the defendants to the effect he never got out of the car until after the affray was over.

The jury for its verdict found the defendants Irene Ham, Maude Ham Phipps, and Viola Church guilty of murder in the second degree, and the

defendants Jean Teaster and Leonard Teaster, guilty of manslaughter. The court pronounced judgments on the verdicts and defendants appealed.

*Attorney-General McMullan, Assistant Attorney-General Love, and Robert L. Emanuel, Member of Staff, for the State.*
*Bowie & Bowie and Higgins & McMichael for defendant appellants.*

BARNHILL, J. The defendants assign as error the refusal of the court below to sustain their demurrer to the evidence under G.S. 15-173. However, the assignment is abandoned as to all the defendants other than Leonard Teaster. They, no doubt, upon reflection, perceived that the evidence, considered in the light most favorable to the State, tends to show that they, acting in concert, made an assault with deadly weapons upon the deceased and her companions, and that in the course of the assault the deceased was killed. Their own testimony tends to show there was a "free-for-all" affray during which Mrs. Church received the blow or blows upon her head which caused her death.

But the defendant Leonard Teaster insists that his demurrer to the evidence was well advised and should have been sustained. We are constrained to agree.

The testimony relied on by him tends to show that he remained in his automobile until the affray terminated. The State's eyewitnesses, without exception, testified that he neither did nor said anything. He merely took his stand at the rear of his automobile and watched the fight.

All who are present at the place of a crime and are either aiding, abetting, assisting, or advising in its commission, or are present for such purpose to the knowledge of the actual perpetrator, are principals and equally guilty. *S. v. Hoffman,* 199 N.C. 328, 154 S.E. 314; *S. v. Holland,* 234 N.C. 354, 67 S.E. 2d 272.

An aider and abettor is one who advises, counsels, procures, or encourages another to commit a crime. *S. v. Hart,* 186 N.C. 582, 120 S.E. 345; *S. v. Williams,* 225 N.C. 182, 33 S.E. 2d 880; *S. v. Holland, supra.*

To render one who does not actually participate in the commission of a crime guilty of the offense committed, there must be some evidence tending to show that he, by word or deed, gave active encouragement to the perpetrator of the crime or by his conduct made it known to such perpetrator that he was standing by to lend assistance when and if it should become necessary. *S. v. Holland, supra.*

If the defendant Leonard Teaster is guilty at all, he is guilty under these principles of law enunciated in our decisions.

We are aware that some textbooks state that "when the bystander is a friend of the perpetrator, and knows that his presence will be regarded by the perpetrator as an encouragement and protection, presence alone may

4—238

be regarded as an encouragement" and that in contemplation of law this is aiding and abetting. Wharton's Crim. Law, 12th Ed., ch. 9, sec. 246; and that this statement has been quoted in some of our decisions. *S. v. Williams, supra; S. v. Holland, supra.* Yet we find no decision of this Court in which it is held that evidence tending to show that a bystander was a friend of the perpetrator and the perpetrator was aware of his presence, and nothing more, is sufficient to support a conviction.

The defendant Jean Teaster was aware of the presence of her husband, and we may assume that in all probability this defendant would have intervened had it appeared to him that his wife was getting the worst of the encounter. But this is a pure surmise based on our knowledge of human nature and not an inference of fact supported by evidence.

While the facts and circumstances in respect to this defendant appearing from the testimony are consistent with his guilt, they are likewise consistent with his innocence. And the guilt of a person charged with the commission of a crime is not to be inferred merely from facts consistent with his guilt. Nor may the enforcement of the criminal law be made to rest upon surmise or conjecture.

The cases cited and relied on by the State are factually distinguishable. In those and like cases there was evidence of some fact or circumstance tending to establish the defendant's actual participation in the commission of the crime charged.

The court in the course of its charge instructed the jury in part as follows:

"On the other hand, gentlemen of the jury, the prisoners and each of them say and contend that if you are so satisfied beyond a reasonable doubt that they, or either of them, inflicted a rock wound on the deceased and the deceased died as the proximate result thereof, then under the law he or she would be guilty of murder in the second degree . . ."

Thus the court in effect stated to the jury that defendants conceded that if the jury found from the evidence that one or more of them struck the deceased with a rock and the deceased died as a proximate result thereof, then under the law she or they would be guilty of murder in the second degree.

There was no such formal admission entered of record. If counsel in their arguments to the jury so admitted—and it does not so appear—then the defendants are not bound thereby. *S. v. Redman,* 217 N.C. 483, 8 S.E. 2d 623. The defendants had entered a plea of not guilty. They strenuously insisted throughout the trial that they fought only in their necessary self-defense and were guilty of no crime. At the same time, there was evidence tending to show that three of them struck the deceased; that two of them struck her with rocks; and that one of the three also struck her in the face with a bottle and another with something that

looked like a battery cable. Hence the charge to which defendants except must be held for error on authority of *S. v. Redman, supra,* and *S. v. Simmons,* 236 N.C. 340, 72 S.E. 2d 743.

Was this charge prejudicial? All the defendants were engaged in an affray in which deadly weapons were used. The homicide resulted in the death of the deceased, so that the defendants, if guilty of an unlawful homicide, are all guilty in equal degree. *S. v. Beal,* 199 N.C. 278, 154 S.E. 604, and cases cited. Three defendants struck deceased with rocks or some other weapon. Jean Teaster and Leonard Teaster did not. The jury convicted the three of murder in the second degree. At the same time it returned a verdict of guilty of manslaughter only as against the two Teasters. It would seem, therefore, that the jury gave heed to the instruction. In any event, the probability that it influenced the verdict is too strong for us to brush it aside as harmless error.

. But the Attorney-General stressfully insists that when the charge is read contextually it becomes apparent that this particular excerpt is not a correct transcript of what the judge said; that slight rephrasing thereof would make it harmonize with statements contained in the preceding and succeeding paragraphs and at the same time constitute a correct statement of the law.

If this be true, then the time to correct the record and make it speak the truth was when the case on appeal was settled. The cause comes before us on a case agreed. We are bound thereby and must assume that it is a correct transcript of the proceedings in the court below. *S. v. Sutton,* 230 N.C. 244, 52 S.E. 2d 921; *Mason v. Commissioners of Moore,* 229 N.C. 626, 51 S.E. 2d 6; *S. v. Robinson,* 229 N.C. 647, 50 S.E. 2d 740; *S. v. Wolfe,* 227 N.C. 461, 42 S.E. 2d 515.

The demurrer to the evidence entered by the defendant Leonard Teaster should have been sustained. As to him, the judgment entered must be reversed. As to the *feme* defendants, for the reasons stated, there must be a new trial.

As to defendant Leonard Teaster,

Reversed.

As to *feme* defendants,

New trial.