In re R.P.M., Juvenile

No. COA04-1135

(Filed 16 August 2005)

**1. Robbery— common law—aiding and abetting—motion to dismiss—sufficiency of evidence**

The trial court erred by denying a juvenile's motions to dismiss the charge of common law robbery based on the theory of aiding and abetting, because: (1) the evidence was insufficient to show that the juvenile knew his friends were going to rob the vic-

**IN RE R.P.M.**

[172 N.C. App. 782 (2005)]

tim, nor did the State introduce any evidence tending to show that the juvenile encouraged his friends in the commission of the crime or that he by word or deed indicated to them that he stood by prepared to assist; (2) the record shows that the juvenile rendered no assistance to the perpetrators of the crime and instead assisted the victim; and (3) the juvenile ran away before his two friends.

**2. Assault— assault with deadly weapon with intent to inflict serious injury—juvenile delinquency—sufficiency of evidence—fatally deficient petition**

The trial court erred by denying a juvenile's motions to dismiss the charges of assault with a deadly weapon with intent to inflict serious injury based on the aiding and abetting theory, because: (1) the juvenile petition lists the offense as assault with a deadly weapon with intent to inflict serious injury but does not list a corresponding statute; (2) there is no North Carolina statute for assault with a deadly weapon with intent to inflict serious injury, and thus, there was no crime listed on the juvenile petition; (3) the addition of the words "with intent" when listing the crime are a material addition and not superfluous as they did not give the juvenile proper notice of the alleged misconduct; and (4) even if the petition alleged a proper offense, the trial court erred by denying the motions to dismiss the charge of assault with a deadly weapon with intent to inflict serious injury when there was no evidence of the intent element.

Judge JACKSON concurring in part and dissenting in part.

Appeal by Juvenile from order entered 19 March 2004 by Judge Avril U. Sisk in District Court, Mecklenburg County. Heard in the Court of Appeals 17 May 2005.

*Attorney General Roy Cooper, by Assistant Attorney General Donna D. Smith, for the State.*

*Robert T. Newman, for juvenile-appellant.*

WYNN, Judge.

To render a person guilty of a crime by aiding and abetting, the State must present "some evidence tending to show that he, . . . by his conduct made it known to [the] perpetrator that he was standing by to lend assistance when and if it should become necessary." *State v.*

*Keeter*, 42 N.C. App. 642, 644-45, 257 S.E.2d 480, 482 (1979). In this case, Juvenile contends that the evidence presented was insufficient to support his convictions of common law robbery and assault with a deadly weapon with intent to inflict serious injury based on an aiding and abetting theory. Because the record shows that Juvenile rendered no assistance to the perpetrator of the crime and instead assisted the victim, we reverse the trial court's adjudication and disposition orders with respect to the common law robbery charge. Furthermore, because the Juvenile Petition lists a nonexistent offense—assault with a deadly weapon with intent to inflict serious injury—we must vacate the trial court's orders on that nonexisting offense.

The evidence at the hearing tended to show that: On 11 November 2003, Juvenile and two older friends, G.G. and R.C., were walking home with three pit bull dogs. Each person walked one of the dogs on a leash. On the way home they passed Fernando "Louis" Gonzales standing outside his place of work talking on a cell phone. According to Mr. Gonzales, the three males walked passed him and immediately returned. Mr. Gonzales testified that the three males were dark-skinned and approximately fifteen, seventeen, and nineteen years of age, but he never identified Juvenile as one of the three males.

R.C. asked Mr. Gonzales if he could use his cell phone. Mr. Gonzales said "no," but told him they could use the office phone inside. Mr. Gonzales testified that the "one that looked younger" hit him in the face. Mr. Gonzales testified that another of the men hit him in the face and let go of the two dogs he was holding and the dogs started biting his feet. After he was knocked to the ground, Mr. Gonzales testified that one of the men was hitting him and two of the dogs were biting him. One man then tried to get the dogs off him. He testified that one of the men went through his pockets and took eighty dollars and a necklace. Mr. Gonzales required several stitches for his injuries.

Juvenile testified that after they saw Mr. Gonzales across the street, G.G. said to R.C. "My pockets are feeling empty." The three then crossed the street, and R.C. asked Mr. Gonzales to use his cell phone. Mr. Gonzales called R.C. a "punta," and then R.C. hit Mr. Gonzales. After R.C. and Mr. Gonzales started fighting, R.C. let go of the dog's leash he was holding. The dog attacked Mr. Gonzales. G.G. said to Mr. Gonzales "Why you hit my brother?" and then pushed him down. At this point, the dog G.G. was holding also got loose. R.C. was kicking Mr. Gonzales, and a dog started shaking Mr. Gonzales's pant

IN RE R.P.M.

[172 N.C. App. 782 (2005)]

leg and then grabbed Mr. Gonzales by the shoulder. Juvenile kicked the dog to get it off of Mr. Gonzales. Juvenile continued to hold the leash of the third dog. Juvenile observed G.G. grab Mr. Gonzales's coveralls, but testified that he did not know G.G. had taken money until the next day. In an earlier statement, Juvenile stated that G.G. ripped open Mr. Gonzales's coverall suit and reached into his pocket and got nineteen dollars in cash. Juvenile then ran home and R.C. and G.G. followed him. R.C. asked Juvenile's guardian if he could leave one of the dogs there, and she allowed that. R.C., G.G., and Juvenile then went to Bojangles where G.G. gave Juvenile one dollar to get food.

At the close of both the State's evidence and all evidence, Juvenile made a motion to dismiss for insufficiency of the evidence; both motions were denied. The trial court adjudicated Juvenile delinquent on the charges of common law robbery and assault with a deadly weapon with intent to inflict serious injury. Juvenile was placed on probation for twelve months along with the conditions of curfew, community service, restitution, and a mental health assessment. Juvenile appealed.

[1] On appeal, Juvenile first asserts that the trial court erred by denying his motions to dismiss the common law robbery petition, alleging that there was insufficient evidence that he aided and abetted the alleged robbery. We agree.

When reviewing a motion to dismiss, we view "the evidence in the light most favorable to the State, giving the State the benefit of all reasonable inferences." *State v. Scott*, 356 N.C. 591, 596, 573 S.E.2d 866, 869 (2002) (citing *State v. Benson*, 331 N.C. 537, 544, 417 S.E.2d 756, 761 (1992)). If we find that substantial evidence exists to support each essential element of the crime charged and that Defendant was the perpetrator, it is proper for the trial court to have denied the motion. *State v. Malloy*, 309 N.C. 176, 178, 305 S.E.2d 718, 720 (1983). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Brown*, 310 N.C. 563, 566, 313 S.E.2d 585, 587 (1984) (citing *State v. Smith*, 300 N.C. 71, 78, 265 S.E.2d 164, 169 (1980)).

"Common law robbery is the felonious, non-consensual taking of money or personal property from the person or presence of another by means of violence or fear." *State v. Parker*, 322 N.C. 559, 566, 369 S.E.2d 596, 600 (1988) (quotation omitted); *State v. Wilson*, 158 N.C. App. 235, 238, 580 S.E.2d 386, 389 (2003) (same). The State charged

Juvenile with the alleged robbery through aiding and abetting. " 'All who are present at the place of a crime and are either aiding, abetting, assisting, or advising in its commission, or are present for such purpose to the knowledge of the actual perpetrator, are principals and equally guilty.' " *Keeter*, 42 N.C. App. at 644, 257 S.E.2d at 482 (quoting *State v. Ham*, 238 N.C. 94, 97, 76 S.E.2d 346, 348 (1953)).

> To render one who does not actually participate in the commission of a crime guilty of the offense committed, there must be some evidence tending to show that he, . . . by his conduct made it known to [the] perpetrator that he was standing by to lend assistance when and if it should become necessary.

*Id.* at 645, 257 S.E.2d at 482; *see also, e.g., State v. Penland*, 343 N.C. 634, 650, 472 S.E.2d 734, 743 (1996) (same), *cert. denied*, 519 U.S. 1098, 136 L. Ed. 2d 725 (1997).

Juvenile cites to *State v. Ikard*, 71 N.C. App. 283, 321 S.E.2d 535 (1984), to support his argument that his mere presence during the alleged robbery was not sufficient to constitute aiding and abetting. In *Ikard*, the defendant was charged with armed robbery, of which the State alleged he should be found guilty because he either acted in concert with or aided and abetted the perpetrators. *Id.* at 284-85, 321 S.E.2d at 536. In *Ikard*, the defendant took the victim's radio, walked away with three other men, and then stood by while two of the men went back and robbed the victim at gun point. *Id.* The defendant then left the scene with the two men. *Id.* This Court found that there was no evidence that the defendant, who stood twenty to twenty-five feet away from the crime scene, knew that the perpetrators of the armed robbery were armed or were going to commit the crime, and that there was no evidence that the defendant encouraged the crime or indicated he stood prepared to render assistance. *Id.* at 285-86, 321 S.E.2d at 537.

Here, the State asserts that because Juvenile heard G.G. say to R.C., "My pockets are feeling empty[,]" after spotting Mr. Gonzales, Juvenile knew G.G. was going to rob Mr. Gonzales. But Juvenile testified that he had no knowledge that this statement indicated G.G. was going to rob Mr. Gonzales. Like in *Ikard*, this is not sufficient evidence to show that Juvenile knew that G.G. was going to rob Mr. Gonzales. Nor did the State introduce any evidence tending to show that Juvenile encouraged G.G. and R.C. in the commission of the crime, or that he by word or deed indicated to them that he stood by prepared to assist. *See Ikard*, 71 N.C. App. at 286, 321 S.E.2d at 537.

**IN RE R.P.M.**

[172 N.C. App. 782 (2005)]

In fact, all evidence introduced indicated that Juvenile was not rendering assistance in committing the crime, but instead tried to help stop the attack. Also, Juvenile ran away before G.G. and R.C.

Viewing the evidence in the light most favorable to the State, there was insufficient evidence to take the case to a jury on the charge of common law robbery. The trial court erred in denying the motions to dismiss the charge of common law robbery.

[2] Juvenile next asserts that the trial court erred by denying his motions to dismiss the "assault with a deadly weapon with intent to inflict serious injury" petition.

Section 7B-1802 of the North Carolina General Statutes provides in pertinent part:

A petition in which delinquency is alleged shall contain a plain and concise statement, without allegations of an evidentiary nature, asserting facts supporting every element of a criminal offense and the juvenile's commission thereof with sufficient precision clearly to apprise the juvenile of the conduct which is the subject of the allegation.

N.C. Gen. Stat. § 7B-1802 (2004). When a petition is fatally deficient, it is inoperative and fails to evoke the jurisdiction of the court. *In re J.F.M.*, 168 N.C. App. 143, 150, 607 S.E.2d 304, 309, *disc. review denied*, 359 N.C. 411, 612 S.E.2d 321 (2005); *In re Green*, 67 N.C. App. 501, 504, 313 S.E.2d 193, 195 (1984). Because juvenile petitions are generally held to the standards of a criminal indictment, we consider the requirements of the indictments of the offenses at issue. *In re J.F.M.*, 168 N.C. App. at 150, 607 S.E.2d at 309; *In re Griffin*, 162 N.C. App. 487, 493, 592 S.E.2d 12, 16 (2004).

An indictment is fatally defective "if it wholly fails to charge some offense . . . or fails to state some essential and necessary element of the offense of which the defendant is found guilty." *State v. Wilson*, 128 N.C. App. 688, 691, 497 S.E.2d 416, 419 (1998) (citation omitted) (internal quotations omitted). "When the record shows a lack of jurisdiction in the lower court, the appropriate action on the part of the appellate court is to arrest judgment or vacate any order entered without authority." *State v. Felmet*, 302 N.C. 173, 176, 273 S.E.2d 708, 711 (1981).

In this case, the Juvenile Petition lists the offense as "Assault w[ith] a Deadly Weapon w[ith] Intent to Inflict Serious Injury" but

does not list a corresponding statute. There is no statute for assault with a deadly weapon *with intent to inflict* serious injury included in the North Carolina General Statutes, therefore, there was no crime listed on the Juvenile Petition.

The State argues that the inclusion of the words "intent to inflict serious injury" are merely superfluous and should be disregarded.[1] *See State v. Pelham,* 164 N.C. App. 70, 79, 595 S.E.2d 197, 203, *appeal dismissed and disc. review denied,* 359 N.C. 195, 608 S.E.2d 63 (2004). The purpose of the Petition is to give notice to the juvenile and his parents. That "notice must be given [to] the juvenile and his parents sufficiently in advance of scheduled court proceedings to afford them reasonable opportunity to prepare, and the notice must set forth the alleged misconduct with particularity." *State v. Drummond,* 81 N.C. App. 518, 520, 344 S.E.2d 328, 330 (1986) (quoting *In re Burrus,* 275 N.C. 517, 530, 169 S.E.2d 879, 887 (1969), *aff'd,* 403 U.S. 528, 29 L. Ed. 2d 647 (1971)). The addition of the words "with intent" when listing the crime are a material addition and not superfluous, as they do not give the juvenile proper notice of the alleged misconduct.

The separate opinion[2] argues that this conclusion is a "hyper technical reading" and unneeded. The separate opinion cites to *Pelham,* 164 N.C. App. at 79, 595 S.E.2d at 204, to support the proposition that additional words in an indictment can "be treated as surplusage and disregarded when testing the sufficiency of the indictment." But in *Pelham,* the words at issue were "by shooting at him" as a description of the assault. *Id.,* 595 S.E.2d at 203. In this case, the extra words are "with intent." This was not a mere description of the crime, but an inclusion of what is normally an essential element of a crime. *See State v. Faircloth,* 297 N.C. 388, 395, 255 S.E.2d 366, 370 (1979) (intent an essential element of burglary); *State v. Littlejohn,* 158 N.C. App. 628, 635, 582 S.E.2d 301, 306 (2003) (intent an essential element of assault with a deadly weapon with intent to kill inflicting serious injury); *State v. Coble,* 351 N.C. 448, 451, 527 S.E.2d 45, 48 (2000) (intent an essential element of attempted murder).

---

1. The State contends that the charge was for assault with a deadly weapon inflicting serious injury, which has no intent element. N.C. Gen. Stat. § 14-32(b) (2004). However, the petition, adjudication order, and disposition order all list the charge as assault with a deadly weapon *with the intent to inflict* serious injury.

2. Since the separate opinion does not disagree with the result, it is actually concurring in the result and not dissenting.

**IN RE R.P.M.**

[172 N.C. App. 782 (2005)]

The Juvenile Petition was fatally defective, we therefore vacate the Petition for "Assault with a Deadly Weapon *with Intent* to Inflict Serious Injury."

Moreover, even if we were to find that the petition did allege a proper offense, we would join with the separate concurring opinion's holding that the trial court erred in denying Juvenile's motions to dismiss the charge of assault with a deadly weapon with intent to inflict serious injury.

To withstand a motion to dismiss the charge at issue, the State must present substantial evidence of the following elements: (1) an assault, (2) with a deadly weapon, (3) an intent to inflict a serious injury, and (4) infliction of a serious injury. An intent to inflict serious injury may be inferred from the nature of the assault, the manner in which it was made, the conduct of the parties, and other relevant circumstances. *See State v. Revels*, 227 N.C. 34, 36, 40 S.E.2d 474, 475 (1946); *State v. Nicholson*, 169 N.C. App. 390, 394, 610 S.E.2d 433, 435 (2005) (intent to kill inferred from the victim's attempts to disengage from argument and escape, deadly nature of the weapon used, and the repeated stabbing by the defendant).

The only evidence presented by the State of intent was Mr. Gonzales's testimony that the "one that looked younger" hit him in the face. This was not sufficient evidence that Juvenile was the person who hit Mr. Gonzales or that Juvenile intended to seriously injure him. Instead of intent to injure, the evidence showed that Juvenile helped Mr. Gonzales by kicking the pit bull dog in an attempt to stop the dog when the dog started biting Mr. Gonzales's shoulder and neck.

Viewing the evidence in the light most favorable to the State, there was insufficient evidence to take the case to a fact finder on the charge of assault with a deadly weapon with the intent to inflict serious injury as there was no evidence of the intent element. The trial court erred in denying the motions to dismiss the charge of assault with a deadly weapon with the intent to inflict serious injury.

Reversed in part; Vacated in part.

Judge BRYANT concurs.

Judge JACKSON concurs in part, dissents in part.

JACKSON, Judge concurring in part, dissenting in part.

For the reasons stated below, I must respectfully dissent from the majority's conclusion that the Juvenile Petition is fatally defective and that, therefore, the Petition for "Assault with a Deadly Weapon with Intent to Inflict Serious Injury" must be vacated.

I concur, however, with the majority's conclusions that there was insufficient evidence to take the case to a jury on the charge of common law robbery and that the trial court erred in denying the motions to dismiss the charge of common law robbery. In addition, I would reverse the trial court as to the charge of Assault with a Deadly Weapon with Intent to Inflict Serious Injury [sic] as well.

The majority argues that the Juvenile Petition is fatally deficient because "it wholly fails to charge some offense . . . or fails to state some essential and necessary element of the offense of which the defendant is found guilty." *State v. Wilson*, 128 N.C. App. 688, 691, 497 S.E.2d 416, 419 (1998) (citation omitted) (internal quotations omitted). Based upon this observation, the majority concludes that the trial court had no jurisdiction initially and that we must vacate the judgment on appeal. Based upon the language included in the Juvenile Petition in the instant case, I believe that this conclusion represents a hyper technical reading of our precedents in which we need not engage.

On its face, the Juvenile Petition charged Juvenile with "Assault w[ith] a Deadly Weapon w[ith] Intent to Inflict Serious Injury." In the body of the petition additional information included alerted Juvenile that he was charged with a Class E felony and that "[t]he Juvenile is a delinquent juvenile as defined by G.S. 7B-1501(7) in that on or about the date of offense shown in the county named above, the juvenile unlawfully, willfully and feloniously, did . . . assault Loius [sic] Gonzales by allowing a pit bulldog to attack him and inflict serious injury." Read together, this was sufficient information to apprise "the defendant of the charge against him with enough certainty to enable him to prepare his defense and to protect him from subsequent prosecution for the same offense." *State v. Coker*, 312 N.C. 432, 434, 323 S.E.2d 343, 346 (1984). Further, at trial, the State specifically asked that the court adjudicate Juvenile "delinquent on . . . assault with a deadly weapon inflicting serious injury" and Juvenile's defense counsel specifically asked the court not to adjudicate him delinquent of the identical offense.

**IN RE R.P.M.**

[172 N.C. App. 782 (2005)]

"An indictment must set forth each of the essential elements of the offense." *State v. Pelham*, 164 N.C. App. 70, 79, 595 S.E.2d 197, 204, *disc. rev. denied*, 359 N.C. 195, 608 S.E.2d 63 (2004) (citing *State v. Poole*, 154 N.C. App. 419, 422, 572 S.E.2d 433, 436 (2002), *cert. denied*, 356 N.C. 689, 578 S.E.2d 589 (2003)). "Allegations beyond the essential elements of the offense are irrelevant and may be treated as surplusage and disregarded when testing the sufficiency of the indictment." *Id.* (citing *State v. Taylor*, 280 N.C. 273, 185 S.E.2d 677, 680 (1972)); *see State v. Muskelly*, 6 N.C. App. 174, 176, 169 S.E.2d 530, 532 (1969). Moreover, a "defendant . . . [has] the right to be charged by a lucid prosecutive statement which factually particularizes the essential elements of the specified offense." *State v. Sturdivant*, 304 N.C. 293, 309, 283 S.E.2d 719, 730 (1981) (citing N.C. Gen. Stat. § 15A-924(a)).

Nevertheless, it is not the function of an indictment to bind the hands of the State with technical rules of pleading; rather, its purposes are to identify clearly the crime being charged, thereby putting the accused on *reasonable* notice to defend against it and prepare for trial, and to protect the accused from being jeopardized by the State more than once for the same crime.

*Id.* at 311, 283 S.E.2d at 731 (emphasis added). Here, such reasonable notice was accomplished, given the totality of the circumstances.

Notwithstanding the fact that I believe the State's Juvenile Petition was sufficient to withstand appellate scrutiny, I believe that Juvenile's conviction in this instance must be reversed here as well. In the petition, Juvenile was charged with assault with a deadly weapon with intent to inflict serious injury; however, several subsequent documents provided as part of the record on appeal properly reference the felony offense as assault with a deadly weapon inflicting serious injury. N.C. Gen. Stat. § 14-32(b).

The elements of assault with a deadly weapon inflicting serious injury are: "(1) an assault, (2) with a deadly weapon, (3) inflicting serious injury, (4) not resulting in death." *State v. Jones*, 353 N.C. 159, 164, 538 S.E.2d 917, 923 (2000); N.C. Gen. Stat. 14-32(b) (2003). *See State v. McCree*, 160 N.C. App. 200, 205-06, 584 S.E.2d 861, 865 (2003). As noted *supra* in the majority opinion, "all evidence introduced indicated that Juvenile was not rendering assistance in committing the crime, but instead tried to help stop the attack. Also, Juvenile ran away before G.G. and R.C."

Therefore, viewing the evidence in the light most favorable to the State, there was insufficient evidence to present the charge of assault with a deadly weapon inflicting serious injury to the jury as well and the trial court erred in denying the motion to dismiss the charge.