IN THE SUPREME COURT OF NORTH CAROLINA

No. 2PA17

Filed 8 June 2018

STATE OF NORTH CAROLINA

v.

JUAN ANTONIA MILLER

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, ___ N.C. App. ___, 795 S.E.2d 374 (2016), ordering that defendant receive a new trial after appeal from a judgment entered on 4 December 2015 by Judge Eric C. Morgan in Superior Court, Guilford County. Heard in the Supreme Court on 7 February 2018.

*Joshua H. Stein, Attorney General, by Derrick C. Mertz and John G. Batherson, Special Deputy Attorneys General, for the State-appellant.*

*Jason Christopher Yoder for defendant-appellee.*

*Southern Coalition for Social Justice, by Ian A. Mance and Ivy A. Johnson, for The Beloved Community Center of Greensboro, amicus curiae.*

MARTIN, Chief Justice.

During a traffic stop, Officer H.B. Harris of the Greensboro Police Department found cocaine in defendant's coat pocket. Defendant did not move to suppress evidence of the cocaine before or at trial, but instead argued for the first time on appeal that the seizure of the cocaine resulted from various Fourth Amendment violations. We hold that defendant's Fourth Amendment claims are not reviewable

on direct appeal, even for plain error, because he completely waived them by not moving to suppress evidence of the cocaine before or at trial. We therefore reverse the decision of the Court of Appeals and remand this case to the Court of Appeals for additional proceedings.

Officer Harris pulled defendant over after a DMV records check indicated that the license plate number for the car that he was driving had been revoked due to unpaid insurance premiums. At the time of the traffic stop, Derick Sutton, the car's owner, was in the passenger's seat. After a brief conversation, Officer Harris asked Sutton and then defendant to step out of the car. Both men complied.

The parties dispute exactly what happened next, including whether defendant consented to be searched. But they do not dispute that Officer Harris ultimately searched defendant. When Officer Harris checked defendant's coat pocket, he found a bag of white powder that was later confirmed to be cocaine and presented as Exhibit 1 at trial. Officer Harris was wearing a body camera that was recording video footage during this traffic stop.

Defendant did not move in limine to suppress evidence of the cocaine, even when the trial court specifically asked if there were pretrial matters to address. Nor did defendant object to the State's use of the cocaine evidence at any point *during* his trial, either when Officer Harris testified about finding cocaine in his pocket or when the cocaine itself was introduced as evidence. Defendant argued to the Court of

Appeals that the trial court "plainly erred" by "admitting the cocaine and testimony about the cocaine," and that the seizure of the cocaine resulted from various Fourth Amendment violations. Defendant also argued that his trial counsel was ineffective for not moving to suppress evidence of the cocaine.

Although the Court of Appeals acknowledged that "footage from an officer's body camera may not reveal the totality of the circumstances," *State v. Miller*, ___ N.C. App. ___, ___ n.1, 795 S.E.2d 374, 376 n.1 (2016), it nonetheless considered the evidence that was presented at trial, including Officer Harris' body camera footage, and conducted plain error review, *see id.* at ___, 795 S.E.2d at 376-79. The Court of Appeals determined that Officer Harris unconstitutionally extended the traffic stop and that, even if Officer Harris had not unlawfully extended the stop, defendant's consent to the search of his person was not valid. *Id.* at ___, 795 S.E.2d at 378-79. In the course of its analysis, the Court of Appeals made determinations about the credibility of Officer Harris' testimony. *See id.*

The Court of Appeals ultimately concluded that the trial court committed plain error by admitting evidence of the cocaine. *Id.* at ___, 795 S.E.2d at 376-79. Because the Court of Appeals ordered a new trial based on defendant's Fourth Amendment claims, it did not reach defendant's ineffective assistance of counsel claim. *Id.* at ___, 795 S.E.2d at 379. The State petitioned this Court for discretionary review of two issues: whether defendant's Fourth Amendment claims were susceptible to plain

error review and, if so, whether the Court of Appeals correctly found plain error. We allowed review of both issues.

This Court adopted plain error review in *State v. Odom*, 307 N.C. 655, 300 S.E.2d 375 (1983). As a general rule, "plain error review is available in criminal appeals for challenges to jury instructions and evidentiary issues." *Dogwood Dev. & Mgmt. Co. v. White Oak Transp. Co.,* 362 N.C. 191, 196, 657 S.E.2d 361, 364 (2008) (citations omitted) (first citing *Odom*, 307 N.C. at 660, 300 S.E.2d at 378; and then citing *State v. Cummings,* 352 N.C. 600, 613, 536 S.E.2d 36, 47 (2000), *cert. denied,* 532 U.S. 997, 121 S. Ct. 1660 (2001)). Even after adopting plain error review, however, we have continued to indicate that the failure to move to suppress evidence when required by statute constitutes a waiver of those claims on appeal. *See, e.g.*, *State v. Hucks*, 332 N.C. 650, 652-53, 422 S.E.2d 711, 713 (1992); *State v. Maccia*, 311 N.C. 222, 227-28, 316 S.E.2d 241, 244 (1984). But we have not squarely addressed whether plain error review is available when a defendant has not moved to suppress. *See, e.g.*, *State v. Walters*, 357 N.C. 68, 85, 588 S.E.2d 344, 354, *cert. denied*, 540 U.S. 971, 124 S. Ct. 442 (2003). This issue is therefore one of first impression for this Court.

For guidance, we first turn to the statutory framework that governs the suppression of unlawfully obtained evidence in our trial courts. N.C.G.S. § 15A-974(a)(1) states that, "[u]pon timely motion, evidence must be suppressed if . . . [i]ts exclusion is required by the Constitution of the United States or the Constitution of

the State of North Carolina." And N.C.G.S. § 15A-979(d) specifies that "[a] motion to suppress evidence made pursuant to this Article is the *exclusive* method of challenging the admissibility of evidence" on constitutional grounds. (Emphasis added.) A defendant generally "may move to suppress evidence only prior to trial," N.C.G.S. § 15A-975(a) (2017), subject to a few, narrow exceptions that permit a defendant to move during trial, *see id.* § 15A-975(b), (c) (2017).

In other words, the governing statutory framework requires a defendant to move to suppress at *some* point during the proceedings of his criminal trial. Whether he moves to suppress before trial or instead moves to suppress during trial because an exception to the pretrial motion requirement applies, a defendant cannot move to suppress for the first time *after* trial. By raising his Fourth Amendment arguments for the first time on appeal, however, that is effectively what defendant has done here. When a defendant files a motion to suppress before or at trial in a manner that is consistent with N.C.G.S. § 15A-975, that motion gives rise to a suppression hearing and hence to an evidentiary record pertaining to that defendant's suppression arguments. But when a defendant, such as defendant here, does *not* file a motion to suppress at the trial court stage, the evidentiary record pertaining to his suppression arguments has not been fully developed, and may not have been developed at all.

To find plain error, an appellate court must determine that an error occurred at trial. *See, e.g.*, *State v. Towe*, 366 N.C. 56, 62, 732 S.E.2d 564, 568 (2012). The defendant, additionally, must demonstrate that the error was "fundamental"—

meaning that the error "had a probable impact on the jury's finding that the defendant was guilty" and "seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings." *State v. Grice*, 367 N.C. 753, 764, 767 S.E.2d 312, 320-21 (alteration in original) (quoting *State v. Lawrence*, 365 N.C. 506, 518-19, 723 S.E.2d 326, 334-35 (2012)), *cert. denied*, 576 U.S. ___, 135 S. Ct. 2846 (2015). But here, considering the incomplete record and the nature of defendant's claims, our appellate courts cannot conduct appellate review to determine whether the Fourth Amendment required suppression. Defendant asked the Court of Appeals to review the length of an officer's stop to determine whether the officer unnecessarily prolonged it, and to review whether defendant voluntarily consented to a search that resulted in the discovery of incriminating evidence. Fact-intensive Fourth Amendment claims like these require an evidentiary record developed at a suppression hearing. Without a fully developed record, an appellate court simply lacks the information necessary to assess the merits of a defendant's plain error arguments.

When a defendant does not move to suppress, moreover, the State does not get the opportunity to develop a record pertaining to the defendant's Fourth Amendment claims. Developing a record is one of the main purposes of a suppression hearing. At a suppression hearing, both the defendant and the State can proffer testimony and any other admissible evidence that they deem relevant to the trial court's suppression determination. In this case, though, the trial court did not conduct a suppression

hearing because defendant never moved to suppress evidence of the cocaine. And because no suppression hearing took place, we do not know whether the State would have produced additional evidence at a suppression hearing, or, if the State had done so, what that evidence would have been. *Cf. Cardinale v. Louisiana*, 394 U.S. 437, 439, 89 S. Ct. 1161, 1163 (1969) ("Questions not raised below are those on which the record is very likely to be inadequate, since it certainly was not compiled with those questions in mind."). To allow plain error review in a case like this one, therefore, "would 'penalize the [g]overnment for failing to introduce evidence on probable cause for arrest [or other matters bearing on the Fourth Amendment claim] when defendant's failure to raise an objection before or during trial seemed to make such a showing unnecessary.' " 6 Wayne R. LaFave, *Search and Seizure* § 11.7(e), at 584 (5th ed. 2012) (alteration in original) (quoting *United States v. Meadows*, 523 F.2d 365, 368 (5th Cir. 1975), *cert. denied*, 424 U.S. 970, 96 S. Ct. 1469 (1976)).

The Court of Appeals' decision in this case illustrates the problem with conducting plain error review on an incomplete record. Relying primarily on *Rodriguez v. United States*, 575 U.S. ___, 135 S. Ct. 1609 (2015), the Court of Appeals held that Officer Harris unconstitutionally prolonged the traffic stop in question beyond the time needed to complete the stop's mission. *See Miller*, ___ N.C. App. at ___, 795 S.E.2d at 377-79. The Court of Appeals reviewed Officer Harris' body camera footage and then determined that Officer Harris did not have reasonable suspicion to extend the stop when he asked defendant and Sutton to get out of Sutton's car. *See*

*id.* at \_\_\_, 795 S.E.2d at 378. To have reasonable suspicion, "an officer . . . must 'reasonably . . . conclude in light of his experience that criminal activity may be afoot,' " *State v. Bullock*, 370 N.C. 256, 258, 805 S.E.2d 671, 674 (2017) (ellipsis in original) (quoting *Terry v. Ohio*, 392 U.S. 1, 30, 88 S. Ct. 1868, 1884 (1968)), based on "specific and articulable facts" and "rational inferences from those facts," *id.* (quoting *Terry*, 392 U.S. at 21, 88 S. Ct. at 1880). But Officer Harris never testified at a suppression hearing in this case. As a result, he never gave testimony for the purpose of establishing that, among other things, he had reasonable suspicion to extend the stop. He may have observed something during the traffic stop that was not captured in his body camera footage and that he did not testify about during the guilt/innocence phase of the trial. If he had testified, his testimony may have provided a basis— assuming for the sake of argument that he did not have one otherwise—for constitutionally extending the traffic stop. We just do not know, because no suppression hearing occurred.

If the Court of Appeals or this Court were to conduct plain error review of a suppression issue on an undeveloped record when resolution of that issue required a *developed* record, moreover, a defendant could unfairly use plain error review to his tactical advantage. For instance, a defendant might determine that his chances of winning a motion to suppress before or at trial are minimal because he thinks that, once all of the facts come out, he will likely lose. But if we were to allow plain error review when no motion to suppress is filed and hence no record is created, that same

defendant might wait to raise a Fourth Amendment issue until appeal and take advantage of the undeveloped record—a record in which some or all of the important facts may never have been adduced—to claim plain error. *Cf. United States v. Chavez–Valencia*, 116 F.3d 127, 132 (5th Cir.) ("If, at trial, the government assumes that a defendant will not seek to suppress certain evidence, the government may justifiably conclude that it need not introduce the quality or quantity of evidence needed otherwise to prevail."), *cert. denied*, 522 U.S. 926, 118 S. Ct. 325 (1997).

And the State would not have a good way of defending against this tactic. On the one hand, the State could try to present evidence at trial in an attempt to prove the legality of a search or seizure even when the defendant did not move to suppress evidence derived from the search or seizure. But if the evidence pertinent to suppression were not relevant to the question of the defendant's guilt, then the State could be thwarted by rules that prohibit the admission of evidence not relevant to issues at trial. *See, e.g.*, N.C. R. Evid. 402. And even if the State were permitted to introduce the full range of evidence that pertained to suppression, it would have to expend prosecutorial resources presenting evidence not directly relevant to a defendant's guilt—evidence that supported only the legality of a search or seizure that the defendant may or may not later challenge on appeal. On the other hand, if the State chose not to present evidence supporting an unchallenged search or seizure, it could risk reversal on an undeveloped record under the plain error standard. *Cf. Wainwright v. Sykes*, 433 U.S. 72, 86-91, 97 S. Ct. 2497, 2506-09 (1977) (using a

similar rationale to explain why the lack of a contemporaneous objection required under state law creates a procedural bar to federal habeas review). If a defendant must move to suppress to keep from forfeiting even plain error review, however, the incentive for a defendant to underhandedly put the State in this position disappears.

Defendant fails to distinguish between cases like his, on the one hand, and cases in which a defendant has moved to suppress and both sides have fully litigated the suppression issue at the trial court stage, on the other. When a case falls into the latter category but the suppression issue is not preserved for some other reason, our appellate courts may still conduct plain error review. For example, in *State v. Grice*, the defendant moved to suppress evidence of marijuana plants, and the trial court held a suppression hearing on whether the plants had been obtained through an illegal search or seizure. *See* 367 N.C. at 754-55, 764, 767 S.E.2d at 314-315, 320. We conducted plain error review, rather than harmless error review, only because the defendant did not renew his objection to the introduction of the evidence at trial. *Id.* at 755, 764, 767 S.E.2d at 315, 320.

Similarly, in *State v. Bullock*, the defendant moved to suppress evidence of heroin found in the car that he was driving, and his Fourth Amendment claim was fully litigated at the trial court stage. *See* 370 N.C. at 256-57, 805 S.E.2d at 673. So there was a complete record on the suppression issue for our appellate courts to review. *See id.* at 258-61, 805 S.E.2d at 674-76. We thus reviewed video footage from the dash cam of the officer who had stopped the defendant, along with suppression

hearing testimony from that same officer, to determine whether the trial court's findings of fact were supported by competent evidence. *See id.* at 260-61, 805 S.E.2d at 675-76. In a few instances, we also used facts that we independently gleaned from our review of that video footage in our legal analysis to clarify and supplement the trial court's findings of fact. *See id.* at 261-63, 805 S.E.2d at 676-77. In other words, we used video footage for limited purposes after a suppression hearing had occurred and a full evidentiary record had been compiled. That is very different from using video footage to *substitute* for a suppression hearing and an evidentiary record, and making determinations about witness credibility in the process, which is what the Court of Appeals did here.

In sum, because defendant did not file a motion to suppress evidence of the cocaine in question, he deprived our appellate courts of the record needed to conduct plain error review. By doing so, he completely waived appellate review of his Fourth Amendment claims. Because we hold that the Court of Appeals should not have conducted plain error review in the first place, we do not need to address (and, based on our analysis, it would not be possible for us to address) the other issue before us—namely, whether the Court of Appeals reached the right conclusion in its plain error analysis. We therefore reverse the decision of the Court of Appeals and remand this case to the Court of Appeals for consideration of defendant's ineffective assistance of counsel claim.

REVERSED AND REMANDED.